## WATSON *et al.* v. EQUITABLE MORTGAGE COMPANY.

The plaintiff having been delayed by litigation for a number of years in collecting an indebtedness due to it, which has largely increased, and the defendants in the present equitable proceeding having interposed claims in forma pauperis, and it appearing that the matter was adjudicated in a former litigation between the parties, and that some of the claimants were also estopped by signing a mortgage which was foreclosed, and others remained inactive for years in making any attack upon the title of the defendant in fi. fa., who was their mother, until it was sought to collect the indebtedness incurred by her and secured by a deed to the land in controversy, there was no error in directing a verdict in favor of the plaintiff and entering a decree enjoining the defendants from further interfering with the land, and ordering its sale by a receiver who had previously been appointed.

Argued July 22, 1908.—Decided February 20, 1909.

Equitable petition. Before Judge Reagan. Monroe superior court. November 18, 1907.

On January 18, 1876, Peter McMickle executed a deed by which he conveyed certain described property. As the deed was recorded and as it was set out in exhibits in the various proceedings referred to below, it named McMickle as party of the first part

and Rufus H. Watson Jr., as party of the second part, and conveyed the land described "unto the said Rufus H. Watson Jr., for the use, benefit, and advantage in trust for the said Mary M. Watson for life (exempt from marital rights of R. H. Watson or any future husband said Mary M. Watson may have), for her sole and separate use, and, on her decease, to such child or children as she may have in life, with the right to the said Rufus H. Watson Jr., trustee as aforesaid, to sell said tract of land, provided, before said sale by said trustee shall be valid, the written consent of the said Mary M. Watson must be first had and obtained." In 1885 R. H. Watson Jr., alleging himself to be trustee for Mrs. Mary M. Watson and her children under the deed of McMickle, applied to the judge of the superior court for leave to make a mortgage upon the property. He alleged, that he desired to make the mortgage for the purpose of getting provisions, and to relieve the land of an encumbrance already existing which was created for the benefit of the trust estate; that it was necessary to have supplies to make the crop for the year, to the amount of $225, and to relieve the property of the existing encumbrance of $590.48; that the mortgage was exclusively for the benefit of Mrs. Watson and her children, and that it was impossible for the children to get the amount necessary for supplies unless the encumbrance was removed. Endorsed on this petition was an acknowledgment of service and "consent for said trustee to mortgage as set forth in the within petition," signed by Mrs. Watson and her children. Without more, the presiding judge signed an order granting the prayer of the petition. At that time four of the children were of age and four were minors, the youngest being seventeen years old. On February 4, 1885, a mortgage to R. P. Brooks & Company was executed in accordance with the order referred to. It was signed not only by R. H. Watson Jr., as trustee, but also by Mrs. Mary M. Watson and the four children who were of age. In 1886 the mortgage was foreclosed, the trustee, Mrs. Watson, and the four children, being made parties defendant to the proceedings. In 1883 another mortgage was executed by R. H. Watson Jr., and the three other children who were of age, to W. H. Head & Company, and was transferred by them to Brooks & Company. In 1886 a rule nisi was issued for the purpose of foreclosing this mortgage. The fi. fa. based upon the foreclosure of the first-mentioned mortgage was

levied on the land, which was sold by the sheriff and purchased by W. H. Head & Company in 1887. They (or the surviving partner) made a deed to Mrs. Mary M. Watson. She applied, through an intermediate agent, and obtained a loan of money from the Equitable Mortgage Company, giving a security deed, in accordance with the provisions of the code, to secure the amount. Upon her failure to meet the coupon notes given for interest as they fell due, under the terms of the contract, the mortgage company declared the entire indebtedness due, and filed suit to obtain a general judgment and also to have a special lien declared upon the land. This suit was begun on October 6, 1894. Various pleas were filed by Mrs. Watson, and the litigation lingered for some time. On March 22, 1897, R. H. Watson Jr., as trustee for Mrs. Mary M. Watson and her children who had signed the agreement for the mortgage to be made by Watson to Brooks & Company (except one who had died, leaving minor children, who were named and alleged to be beneficiaries in her stead), filed an equitable petition reciting substantially the facts above set out, and alleging that the legal title to the land was in Watson as trustee, that the deeds already made were clouds upon his title, and it would be further beclouded by allowing a foreclosure and sale. He prayed, that the pending suit in favor of the Equitable Mortgage Company against Watson be enjoined; that the deeds from the sheriff to Head & Company, from Brooks & Company to Mrs. Watson, and from Mrs. Watson to the Equitable Mortgage Company, be set aside and declared void; that the title to the land be re-established in Watson as trustee, or in some other proper person to be selected by the court, in order to execute the trust in accordance with its terms; and for process and general relief. The Equitable Mortgage Company answered this, denying that the plaintiff had the legal title to the land, insisting that the property was subject to the indebtedness secured by the mortgage to Brooks & Company, and that the plaintiff was estopped from denying his right to make such mortgage or that the estate was liable. It alleged, that the order was legally obtained, and that the parties at interest had notice thereof; that the trustee also had authority, with the written consent of Mrs. Watson, to make the mortgage. It denied the substantial allegations on which the plaintiff based his prayers for equitable relief, and insisted that the injunction prayed for should

be denied, and that it should be allowed to obtain a judgment in its suit against Mrs. Watson. A petition was presented to the court by counsel representing the living children of Mrs. Mary M. Watson, other than R. H. Watson Jr., and the children of the daughter of Mrs. Watson who had died. It stated that they, "by leave of the court just [first?] had, amend their bill and ask that they be made parties to said petition in their own right, and that the case proceed as though filed originally in their names." Then followed a charge, that the deeds set out in the original petition filed by Watson as trustee were "shadows" upon their title, and should be removed; that R. H. Watson Jr., had not been faithful to his trust, and should be removed therefrom and another be appointed in his place to take charge of the lands and preserve them from waste for the benefit of these petitioners, "who are the remaindermen;" that he should not be allowed to longer hold the estate; and that the mortgage company should not be allowed to acquire any title to the lands "by their illegal conduct, for the same would be a shadow on the title of petitioners, and would entail useless litigation." This was signed by an attorney as "Ptrs. Atty." Below the signature of the attorney appeared the entry. "Amendment allowed and ordered filed, August 27, 1904." As exhibited on the original petition, this order appears to have been duly signed, and this is referred to in the brief of evidence. As copied in another place in the record it was not signed by the judge. Immediately below it was the entry of filing by the clerk. On the same day a verdict was rendered in favor of the "defendants," and a judgment entered thereon. A verdict and judgment were also had in favor of the Equitable Mortgage Company against Mrs. Watson generally, and also declaring a special lien against the land, based upon the suit by the company against her. Before the company could file a deed of reconveyance and have the land sold, Mrs. Watson died. Later an administrator was appointed upon her estate, and the mortgage company caused a deed of conveyance for the purpose of levy and sale to be made to him. Thereupon a claim in formâ pauperis was interposed by R. H. Watson Jr., as trustee, and another by the children of Mrs. Mary M. Watson, and a next friend of her grandchildren. This was in 1906. Thereupon the Equitable Mortgage Company filed its equitable petition, reciting the various preceding transactions, deeds,

mortgages, and litigations; asserting that Mrs. Mary M. Watson had a perfect title to the land at the time she conveyed it to the company; that both Watson as trustee and the other claimants were concluded and estopped by the previous proceedings and judgments, as well as by their own conduct; that the land was deteriorating in value and was already worth much less than the amount due on the judgment of the company, and taxes were accruing, while it was delayed by a continued litigation and interposition of claims; that the estate of Mrs. Watson was insolvent, and some of the claimants had taken possession of the land, claiming to have rented it from Watson as trustee, and refused to deliver it to the administrator, and that they were insolvent and unable to respond in damages. It was prayed, that the claimants be enjoined from asserting title to the land, or interfering with it, or exercising acts of control over it; that a receiver be appointed to take charge of it and collect the rents from it; that it be sold for the payment of taxes and the indebtedness due to the company; and that process issue and a guardian ad litem be appointed for the minors. On April 30, 1906, the defendants, Watson et al., filed an answer in which they did not take issue with the plaintiff as to the material allegations in regard to what had occurred. They asserted that they had filed the claims in good faith, and did not know that a verdict and judgment had been taken against them upon the equitable petition filed by Watson, trustee, against the Equitable Mortgage Company. They also alleged that the lands had been rented for the year 1906 in good faith, and the rent notes had been pledged for supplies. On December 1, 1906, they filed an amendment to their answer, in which they alleged that they could not admit or deny a number of paragraphs of the plaintiff's petition, for want of sufficient information, but that they had a complete title to the land involved, "for that the same was deeded to their mother, Mrs. Mary M. Watson, for life, and at her death to her surviving children; and these defendants say that they are the only surviving children of said Mrs. Mary M. Watson." They denied having borrowed any money from the mortgage company, or having received any benefit therefrom, and asserted that they were free from any collusion and their title was free from any encumbrances. They alleged that the petition was filed at the instance of certain parties who had colluded to deprive them of their rights and to force

them to pay money which was borrowed by the life-tenant. Attached to this answer was a copy of the deed from McMickle, reciting its contents as already herein set out. The case came on for final trial at the August term, 1907, of court. The presiding judge directed a verdict for the plaintiff, the Equitable Mortgage Company, and judgment was entered accordingly. The defendants' motion for a new trial was overruled, and they excepted.

*J. W. Preston Sr.,* and *M. G. Bayne,* for plaintiffs in error.

*Cabaniss & Willingham,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

This litigation in various forms, has been in court for many years. Under the law, we think it should come to an end. Whether the application of Watson, as trustee, for leave to mortgage the property was duly served or properly passed upon at chambers, and whether the estate of the children of Mrs. Watson was subject to be encumbered by the trustee for a loan, or an indebtedness incurred by him, or whether the reverse is true, are merely academic questions in the present state of the case. R. H. Watson Jr., as trustee, applied for and obtained leave to make the mortgage, and did make it. It purported to cover the title to the land in fee, not a mere life-interest. All of the children of Mrs. Watson consented in writing to the making of the mortgage. Four of them were then of age, and not only agreed to the application of the trustee, but also joined in and signed the mortgage itself. Whether, under the order and acts of the trustee, their interest or title was subject to be mortgaged or not, they are in no situation to complain of their own conduct. If their interest was a legal estate in remainder, no reason appears why they could not mortgage it, if they so desired. They were parties to the foreclosure proceeding. As to the four children who were of age, therefore, the mortgage made to Brooks & Company was legal and binding, and the foreclosure and sale carried with it whatever title or interest they had. There was nothing more for them to litigate about.

As to the other four children, they also knew of the application of Watson as trustee to be allowed to execute the mortgage, and consented to his doing so. There is no contention that they did not know that he executed the mortgage in accordance with the application, or that money was loaned upon it, or that a foreclosure and sale were had, or that their mother purchased from Head & Com-

pany, and subsequently executed a security deed to the Equitable Mortgage Company. The mortgage was executed by Watson, as trustee, and the other children in February, 1885. At that time the youngest of the four children who did not sign it was seventeen years of age. It was foreclosed in 1886, and the sheriff sold the land in 1887. In the same year Head & Company, who were the purchasers at the sheriff's sale, sold and conveyed the land to Mrs. Watson. In 1890 she obtained the loan from the Equitable Mortgage Company and executed the security deed to it. All of these four children were still in life except one. If they were parties to the former litigation with the mortgage company, they were bound by the result, if the court had jurisdiction of the subject-matter. If they take the position that they were not parties to that litigation and did not assert any claim of title therein, then they have stood quietly by, knowing that they had agreed to the making of the original mortgage, which was the beginning of the whole transaction, and seeing sales made, titles conveyed, and parties change their status in regard to the land, without any effort to interpose any objection or to claim any title or to repudiate their agreement that the original mortgage should be made, until in 1906 they interposed a claim to the sale of the land under the fi. fa. issued in favor of the mortgage company against Mrs. Watson, and then by answer to the present equitable proceeding of the company asserted that an unincumbered title in remainder was vested in them. It might well be doubted whether they would have any status now to upset the various transactions and conveyances which have been made, and whether they would not be estopped by their conduct and laches. But in fact they were bound by the judgment in the former litigation. Watson, as trustee, filed an equitable proceeding to enjoin the mortgage company from obtaining a judgment declaring a special lien upon the land, setting up that as trustee he represented the children of Mrs. Watson, and certain grandchildren who stood in the place of a deceased child; that the order authorizing the making of the mortgage to Brooks & Company was void and conferred no rights as against them; that the sheriff's deed under the foreclosure of such mortgage, and the deeds since made, including the security deed to the Equitable Mortgage Company, should be cancelled as clouds upon the title; and praying that he have such further legal and equitable relief as might be

proper. The other children of Mrs. Watson, and the children of the deceased daughter, applied to be made parties, and prayed that the case should proceed as if originally filed in their names. They charged unfaithfulness on the part of the trustee, and prayed that he be removed; and also alleged that the mortgage company should not be allowed to acquire any title to the lands, as it would cast a further "shadow" upon their title. A verdict was rendered and a decree entered in favor of the Equitable Mortgage Company.

It is true that if the children and grandchildren of Mrs. Watson be treated as remaindermen in fee under the original trust deed, they could not sue to recover possession of the land during the life estate. But they filed, not a suit to recover possession, but an equitable proceeding to protect their alleged remainder interest, and to have alleged clouds removed from it. The Equitable Mortgage Company did not defend on the ground that they were remaindermen in fee, filing suit prematurely, but on the ground that Mrs. Watson had the fee-simple title, that the company was entitled to proceed against the land, and that the deeds were not clouds but conveyances carrying perfect title. The merits of the controversy were in issue without objection. Watson, as trustee, and the other children of Mrs. Watson, and the representatives of the deceased child made the contention, and were met on the merits. There was a verdict and decree against them. They are bound by the judgment which they have invoked, deciding that the fee-simple title was in Mrs. Watson, and that the deeds under which she held were not clouds, but conveyances of title.

The grandchildren of Mrs. Watson, who claimed to stand in the position of their deceased mother, were apparently minors. But this was not a suit brought against minors, requiring service upon them and the appointment of a guardian ad litem in order to bring them before the court. It was a suit instituted by a person claiming to be a trustee acting for the benefit of these minors along with others. At their own instance, through an attorney representing them, they applied to be made parties complainant, and filed pleadings as such in the case. They were thus proceeding as plaintiffs, not being proceeded against as defendants. Section 4947 of the Civil Code declares that "A suit commenced and prosecuted by an infant alone is not void, and although the suit is de-

fective in wanting a guardian or next friend, the defect is amendable before verdict, and cured by verdict."

As set out as an exhibit in one place in the record before us, referred to in the brief of evidence, the amendment is stated to have been allowed by the presiding judge, and such allowance appears to be signed by him. As set out in another place in the record, this amendment has upon it the words, "Amendment allowed and ordered filed, August 27, 1904," which is unsigned, but is immediately followed by an entry of filing by the clerk. If the former is correct, the amendment was formally allowed by order signed by the presiding judge. If the latter be correct, the order allowing the amendment was not signed by the judge, but the amendment was filed in the office of the clerk, and was evidently treated as a part of the pleadings in the case.

R. H. Watson Jr., testified that what he did in regard to giving a mortgage to Brooks & Company was for the benefit of the life-estate, and that he did not intend to give a mortgage affecting the interest of the children. (The mortgage itself, however, was not confined to the life-estate, but was on the fee simple.) He also testified that he employed Mr. Berner, the attorney who appeared for him and for the other children of Mrs. Watson and her grandchildren in the former litigation, for the purpose of protecting the trust estate, but did not employ him for the remaindermen. Another of the children of Mrs. Watson testified that he joined in employing the attorney to assist his mother in protecting her estate, but not to represent any interest in remainder; but he added, "Mr. Berner came to my house a few days before that time, and I agreed to the verdict in the case, as did the other children." Two attorneys of the court testified that they were counsel for the Equitable Mortgage Company, "in the case of R. H. Watson et al. *v.* Equitable Mortgage Company;" that Mr. Berner represented "the plaintiff;" that counsel agreed that the verdict and judgment should be taken in the case for the defendant, which was done, but Mr. Berner continued it for more than a week "to acquaint his clients of it and get their full consent thereto; they all knew of the suit and agreed to the direction given it," and that some of the plaintiffs and the husbands of others were present at the time. None of the children or grandchildren of Mrs. Watson denied the employment or authority of Mr. Berner, except in the very quali-

fied way in which two of them testified as above stated. When an attorney appears of record for parties who do not deny or disprove his authority, presumably he is employed and has the authority of an attorney in the case. It is evident that the amendment was treated and acted on as a part of the pleadings. *Swatts* v. *Spence*, 68 *Ga.* 496 (3). One of the witnesses stated that the youngest of the children was, at the time of the trial of the present case, 39 years of age. No attack by any direct proceeding was made upon the verdict or judgment in the former case, nor was any fraud or collusion shown. We think the parties are bound.

On the trial the record of the deed from McMickle was introduced in evidence. It recited that the conveyance was to Rufus H. Watson Jr., "for the use, benefit, and advantage in trust for said Mary M. Watson for life (exempt from marital rights of R. H. Watson Jr., or any future husband said Mary M. Watson may have), for her sole and separate use, and, on her decease, to such child or children as she may have in life." The original deed was in court in the possession of counsel for the defendants. He objected to the admission of the record, and, after an adverse ruling, put the original deed in evidence, and moved to rule out the record and also to have the recorded deed corrected, as some words were omitted which were included in the original deed. The court refused to so order or to exclude the deed as recorded, but ruled that both deeds should go to the jury, leaving the issue made to be passed on by them. As he ultimately directed a verdict, the matter did not take that direction. The only point of materiality about this was that the original deed contained the words, "or representatives of child or children," which were omitted in the deed as recorded, so that the original deed read, "and, on her decease, to such child or children or representatives of child or children as she may have in life." Assuming that the trust was only for the life-tenant, with remainder in fee, the only difference these words would make would be as to the children of the deceased daughter. With such words in the deed they would stand in place of their mother under the terms of the deed itself, but they would stand in no better position than would their mother if in life. With those words omitted, they would inherit such title as their mother had. The insertion of those words would not make them any the less bound by the former ad-

judication. They there appeared and attacked the mortgage and deeds as already stated. The judgment was against all of the parties now claiming as remaindermen. They set up their rights under the McMickle deed. The omission of the words mentioned from the record does not prevent them from being bound. Moreover, the deed is now in the custody of these parties. There is nothing to indicate that it was ever lost or not accessible to them. If in other exhibits in former cases and in this case they have omitted those words, there would seem to be no reason why they should have relief because of that fact.

*Judgment affirmed. All the Justices concur.*